Johnson, J.
It appears, from the record, that Lee was indicted at the January term, 1874, for selling intoxicating liquor, to be drank where sold, and was arraigned and pleaded not guilty.
At the May term, 1874, being before the court under recognizance to appear and answer to this charge, he asked and obtained leave to withdraw his plea, and enter a plea of guilty, whereupon he was sentenced to pay a fine of ten dollars and costs, and to stand committed until said fine and costs were paid or secured. These proceedings were had May 12,1874, but no steps were taken to carry the sentence into execution.
Afterward, on the 15th of May, 1874, and during the *114 same term, Lee was again before tbe court, under another recognizance, to answer to another indictment, for seiliug liquor to a minor, and the court then finding that in passing said sentence in the first case it bad acted under a misapprehension of tbe facts of tbe case, and that no portion of said fines and costs bad been paid or secured, and that defendant bad not been taken into custody under said judgment, set aside tbe same, and proceeded again to sentence him.
The defendant excepted to setting aside the judgment, and offered to pay tbe fine and costs, but the court refused to allow the clerk to receive the same. He then filed a plea in abatement, reciting the foregoing facts, and that tbe two indictments were for one and tbe same sale of liquor.
He also demanded leave to withdraw bis plea of guilty, and again enter bis first plea of not guilty, which the court refused.
He was then sentenced anew, upon bis plea of guilty, to pay a fine of thirty dollars and costs, and be committed to jail twenty days, and to stand committed until the fine and costs were paid.
To all the acts and proceedings of tbe court after tbe first sentence pronounced on the 12th of May, tbe defendant excepted.
Tbe single question is, bad the court tbe power to revise and increase its judgment, at the same term before any part of tbe fine and costs bad been paid, and before any steps had been taken to execute it ?
That this power exists, is settled by a long line of decisions of the highest authority.
It is said by Lord Coke (Co. Litt. 260«) that, “ during the term wherein any j udicial act is done, tbe record remaineth in the breasts of the judges of the court, and in their remembrance, and therefore tbe roll is alterable during that term, as the judges shall direct; but when that term is past, then tbe record is in tbe roll, and admittetb of no alteration, averment or proof to tbe contrary.”
*115 In 1 Chitty Grim. Law, 722, the rule is stated thus: “In cases of misdemeanors it is clear that the court may vacate the judgment before it becomes a matter of record, and may mitigate, or pass another, even when the latter is more severe ; and the justices at sessions have the same power during the session, because it is regarded only as one day.”
The power has been often exercised both in England and in this country in numerous eases. Regina v. Fitzgeral, 1 Salk. 401; The King v. Price, 6 East. 327; The King v. Justices, 1 M. & S. 444; Darling v. Gurney, 2 Dowl. Pr. C. 101; Commonwealth v. Weymouth, 2 Allen, 144; The State v. Harrison, 10 Yerker, 542; Miller v. Finkle, 1 Parker C. 374; Matter of Mason, 8 Mich. 70; Jobe v. The State, 28 Geo. 235; Cheang-Kee v. United States, 3 Wall. 320; Basset v. United States, 9 Wall. 39; Bishop Crim. Procedure, § 1123.
In Basset v. United States the court goes much farther than is required in this case.
It was there held, that after a sentence to jail upon plea of guilty, and after the prisoner was committed and was serving out his sentence, the court might for good cause, at the same term, set the sentence aside.
We are not called upon to discuss the wisdom or expediency of the course adopted by the court, in revising and increasing a senteuce which had been formally promulgated and pronounced on a convict.
It appears from the record, that in passing the first sen-, tence, the court acted under a misapprehension of the facts.
In the absense of a showing to the contrary, we must presume, that there were sufficient reasons addressing themselves to the sound judicial discretion of the court for such action, and that it was deemed to be necessary in furtherance of justice and the due administration of the law. It is said this is a dangerous power. The same may be said of the exercise of all judicial discretion.
This is equally as true of the discretion exercised in the first instance, in fixing the sentence, as in that exercised in revising it.
*116 If the court in revising its own sentence coniines itself to such information as it has the right to have in the first instance, no greater danger of abuse exists than in the exercise of judical discretion in rendering its first judgment.
The power to revise judgments, of the same term, and, before execution has commenced, to correct errors and mistakes is necessary for the protection of the defendant, as well as the public, and may be exercised as well in his,favor as against him, when the court has been misled by mistake or fraud.
The refusal of the court to allow the defendant to withdraw his plea of guilty, and again plead not guilty, rested in the sound discretion of the court, and can not be reviewed for the reasons already given.

Judgment affirmed.

Ashburn, J., dissented.